## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 29 2016, 9:02 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Paul J. Podlejski
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marven Lemock,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 29, 2016<br><br>Court of Appeals Case No.<br>48A02-1507-CR-1048<br><br>Appeal from the Madison Circuit<br>Court 1<br><br>The Honorable Angela Warner-Sims, Judge<br><br>Trial Court Cause No.<br>48C01-1303-FD-648 |

**Bailey, Judge.**

# Case Summary

Marven Lemock ("Lemock") appeals the revocation of his probation after the trial court found by a preponderance of the evidence that Lemock had violated his probation by committing new criminal offenses. We affirm.

# Issues

Lemock presents two issues for our review:

I.    Whether there was substantial evidence of probative value to support the revocation of his probation; and

II.   Whether he was denied due process during the revocation proceedings.

# Facts and Procedural History

On January 8, 2014, Lemock pleaded guilty to Domestic Battery and Criminal Confinement, as Class D felonies. The trial court sentenced Lemock to thirty-six months in the Indiana Department of Correction ("DOC") on each charge, with the sentences to be served concurrently on in-home detention. On November 7, 2014, the court modified his sentence so that the remaining balance would be served on probation. As a standard condition of probation, Lemock was required to "obey all municipal, state, and federal laws and behave well in society[.]" (Tr. 110.) Lemock's probation was set to expire on March 9, 2016.

[4] Following physical altercations with his ex-fiancée, J.M., that occurred between June 3 and 7, 2015, Lemock was arrested and charged with committing two counts of Domestic Battery, as Level 6 felonies, Criminal Confinement, as a Level 6 felony, and Domestic Battery, as a Class A misdemeanor. On June 12, 2015, the probation department filed a notice of probation violation, in which it alleged that Lemock had violated the conditions of his probation by committing new criminal offenses, and by failing to successfully complete a court-ordered Batterer's Intervention Program.

[5] The court held an evidentiary hearing on July 6, 2015, at the conclusion of which the court found by a preponderance of the evidence that Lemock had violated the conditions of probation and ordered the balance of his sentence served in the DOC. Lemock now appeals.

# Discussion and Decision

## Substantial Evidence

[6] Lemock first argues there was insufficient evidence to support revocation of his probation. "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). A probation hearing is civil in nature. *Murdock v. State*, 10 N.E.3d 1265, 1267 (Ind. 2014). The State must prove an alleged probation violation by a preponderance of the evidence. *Id.* When reviewing the sufficiency of the evidence, we consider only the evidence most favorable to the judgment, without regard to weight or credibility. *Id.* We will affirm a

probation revocation if there is substantial evidence of probative value to support the court's conclusion that a probationer has violated any condition of probation. *Id.* (quotation marks and citation omitted).

[7] The trial court found by a preponderance of the evidence that Lemock violated the conditions of his probation by committing new criminal offenses of battery, criminal confinement, and invasion of privacy. A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner, commits battery. I.C. § 35-42-2-1. A person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement. I.C. § 35-42-3-3. A person who knowingly or intentionally violates certain protective or no-contact orders commits invasion of privacy. *See* I.C. § 35-46-1-15.1.

[8] At the revocation hearing, J.M. testified that during an argument at J.M.'s house on June 3, 2015, Lemock pushed her, pinned her against the couch, pulled her hair, nipped at her face with his teeth, placed his hand around her throat, and choked her. J.M.'s friend Fatimah Dean ("Dean"), who was present during part of the argument, testified that she witnessed Lemock "[throw J.M.] over the couch" and "digging in [J.M.'s] face." (Tr. 99.) The State introduced into evidence a photograph taken on June 3, 2015 showing bite marks on J.M.'s eyelid.

[9] Lemock stayed overnight after the fight, and the next day J.M. took Lemock to his probation appointment. J.M. testified that she and Lemock had a long

discussion, after which she "dropped the restraining order." (Tr. 75.)  Lemock also testified that he discussed with J.M. that day his reluctance to have contact with her because of the order, and admitted that he had been in communication with J.M. while there was a protective order in place.

[10]  J.M. testified that in the early morning hours of June 7, 2015, she and Lemock got into an argument while she was driving them home from a bar.  After they stopped at Taco Bell, Lemock threw tacos at J.M., pulled her hair, held her down and bit her face several times, and physically forced her into the passenger seat.[1]  Dean, who was on a cell phone call with J.M. during part of the argument, heard the phone drop and overheard "scuffling" and J.M.'s screams.  (Tr. 104.)  Dean then went to J.M.'s house, where she observed swelling on J.M.'s face and bruises on J.M.'s arms.  The State introduced into evidence a photograph taken on June 7, 2015 showing redness and swelling on J.M.'s face.

[11]  It is well-settled that a criminal conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim.  *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).  As J.M.'s testimony alone would have been sufficient to sustain a conviction, her testimony plainly satisfies the lower burden of proof necessary to support revocation of Lemock's probation.  Furthermore, the State presented corroborating evidence in the form

---

[1] J.M. testified that Lemock "grab[bed] my thigh and somersault[ed] me over to the passenger side of my vehicle." (Tr. 83.)  She further described the act as "he forcefully rolled me and pushed me over." (Tr. 84.)

of Dean's testimony and photographs of J.M.'s injuries. There was substantial evidence of probative value presented from which the trial court could find by a preponderance of the evidence that Lemock violated the conditions of his probation by committing new criminal offenses during his probationary period.

## Due Process

[12] Lemock next argues that he was denied due process during the probation revocation proceedings. Probation revocation implicates a defendant's liberty interest, and thus he is entitled to some procedural due process. *Cox v. State*, 850 N.E.2d 485, 488 (Ind. Ct. App. 2006). In the context of probation revocation,

> [t]he minimum requirements of due process include: (a) written notice of the claimed violations of probation; (b) disclosure to the probationer of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking probation.

> Probation revocation is a two-step process. First, the court must make a factual determination that a violation of a condition of probation actually has occurred. If a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. Indiana has codified the due process requirements at Indiana Code § 35-38-2-3 by requiring that an evidentiary hearing be held on the revocation and providing for confrontation and cross-examination of witnesses and representation by counsel.

*Id.* (citations omitted).

[13]     Lemock first contends that he was not afforded due process because the notice of probation violation alleged that he violated his probation by committing domestic battery and criminal confinement, but made no mention of invasion of privacy.  The trial court found by a preponderance of the evidence that Lemock violated the terms of his probation by committing new criminal offenses, specifically battery, criminal confinement, and "[b]y his own admission," invasion of privacy.  (Tr. 139.)

[14]     "Evidence of a single probation violation is sufficient to sustain the revocation of probation."  *Smith v. State*, 727 N.E.2d 763, 766 (Ind. Ct. App. 2000).  The trial court found that Lemock committed both criminal offenses of which he received notice.  Evidence of either one of these offenses would have been sufficient to sustain revocation of his probation.  Lemock thus cannot show prejudice arising from the court's finding that he admitted to a third offense. *See Hubbard v. State*, 683 N.E.2d 618, 622 (Ind. Ct. App. 1997) (holding that where the trial court found defendant had violated several conditions of probation of which he received notice, it was harmless error to find defendant in violation of a condition of which he did not receive notice).

[15]     Lemock next asserts that he was denied due process because the trial court failed to provide him with a written statement as to the evidence relied upon and the reasons probation revocation was appropriate.  Here, the reasons for revoking probation were set out in the court's written order, stating:

1. Defendant failed to behave well in society, to wit: on 6/8/15, Defendant committed a new criminal offense of Criminal Confinement, Battery, and Invasion of Privacy. (4a)

(App. 10.) Furthermore, the transcript of the hearing is part of the record, which, although not the preferred method of fulfilling the writing requirement, provides the evidence upon which the court relied. *See Hubbard*, 683 N.E.2d at 621 (holding that the writing requirement was satisfied where the order of revocation provided the reasons for, and the hearing transcript provided the evidence underlying, the court's order revoking defendant's probation).

[16] Finally, Lemock argues that he was "not afforded the two-step process as prescribed by the Courts, as there was never any portion of the hearing devoted to a proper sanction on the alleged violation." (Appellant's Br. 9.) We disagree. The trial court held a full evidentiary hearing, during which Lemock testified at length regarding his version of the events on June 3 and June 7, 2015. After finding that Lemock violated the conditions of his probation, the court determined based on the evidence presented that an appropriate sanction was to order the balance of his sentence executed. *See* I.C. § 35-38-2-3(h)(3).[2]

---

[2] Ind. Code section 35-38-2-3(h) provides:

(h) If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:

(1) Continue the person on probation, with or without modifying or enlarging the conditions.

(2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

(3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

The court was not required to hold a separate evidentiary hearing on Lemock's statutorily-authorized sanction.

# Conclusion

[17] There was substantial evidence of probative value to support revocation of Lemock's probation. Lemock was not deprived of due process.

[18] Affirmed.

Vaidik, C.J., and Crone, J., concur.